JMR-SAA/2018R01103

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20-10 (JHR) |
| v. | : | |
| HURRIYET ARSLAN | : | 18 U.S.C. §§ 1349, 1344, 1957<br>18 U.S.C. §§ 981 and 2 |
| | : | 28 U.S.C. § 2461(c) |

**INFORMATION**

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

**Count 1**
**[18 U.S.C. §1349 - Conspiracy]**

**The Defendant and Other Entities or Organizations**

1. At all times relevant to Count 1 of this Information:

a. Defendant HURRIYET ARSLAN was a resident of Willingboro, New Jersey. Defendant ARSLAN was a used car dealer in the State of New Jersey and operated a business named Deal Automotive Sales LLC (hereafter "Deal Automotive Sales"), also doing business as "Car-S-Mart" in Florence, New Jersey. Defendant ARSLAN was a native of Turkey and became a naturalized United States citizen in 2011. Deal Automotive maintained bank accounts at TD Bank, N.A. ("TD Bank").

b. Co-Conspirator 1 (hereinafter "CC1"), who was a co-conspirator but not named as a defendant herein, was a foreign national believed to be residing in Turkey.

c. Co-Conspirator 2 (hereinafter "CC2"), who was a co-conspirator but not named as a defendant herein, was a foreign national believed to be residing in Turkey. CC2 employed several individuals in Turkey and elsewhere.

d. Co-Conspirator 3 (hereinafter "CC3"), who was a co-conspirator but not named as a defendant herein, was a foreign national residing in Germany. CC3 was born in Turkey and held citizenship in both Turkey and Germany.

e. Co-Conspirator 4 (hereinafter "CC4"), who was a co-conspirator but not named as a defendant herein, was a resident of Granada Hills, California. CC4 was a native and citizen of Turkey and was granted lawful permanent resident status in the United States in September 2014.

f. Corporation 1 was an oil refining company headquartered in Seoul, South Korea. It produced lube-based oil and petro-chemical products, and it refined approximately 669,000 barrels of crude oil through its facilities daily. Corporation 1 maintained bank accounts in South Korea.

g. Victim 1 was the only United States-based representative of Corporation 1. Victim 1's office was located in Fort Lee, New Jersey.

h. Witness 1 was a resident of Browns Mills, New Jersey.

i. TD Bank and Bank of America were "financial institutions" within the meaning of Title 18, United States Code, Section 20.

j. "Phishing," as used herein, was a practice that involved sending fraudulent emails that purported to be from a legitimate sender.

Phishing emails were designed to entice their recipients to visit a fraudulent website where the recipient was then tricked into disclosing personal information, such as login information for email or financial accounts, or tricked into downloading malicious software by clicking a hyperlink contained in the email.

**The Department of Defense Contracting Procedure**

k. The United States Department of Defense ("DoD") was a department of the Executive Branch of the United States that provided military forces to protect the security of the United States and managed military installations and facilities on behalf of the United States.

l. The DoD contracted with private companies to purchase a variety of equipment and supplies. Such contracts were often arranged through the Defense Logistics Agency (hereinafter "DLA"), a component of the DoD. The DLA provided worldwide combat logistics support to various DoD departments and agencies – including the Army, Navy, Air Force, and Marine Corps – by supplying the United States military with equipment, materials, and services.

m. The Defense Finance and Accounting Service ("DFAS") was an agency of the DoD. DFAS was responsible for all payments to service-members, employees, and vendors. In addition to DFAS, the U.S. Department of the Treasury, made payments for the DoD, and its departments and agencies.

n. In order to conduct business with the DoD and submit bids

for various defense equipment, goods, and services, a vendor, such as Corporation 1, must have an active registration in the System for Award Management ("SAM") database. The SAM database was administered by the United States General Services Administration (hereafter "GSA"). The SAM database was a free United States government database through which authorized vendors, including DoD vendors, provided the Federal Government with corporate contact information, including financial information and corporate leadership information. This database, among other things, allowed the Federal Government to route electronic payments to the proper financial accounts.

o. The SAM database allowed foreign vendors to input domestic banking information (*i.e.*, bank account and routing numbers), but did not allow foreign vendors to input foreign banking information. For the purposes of bidding on and receiving DLA bid awards, foreign vendors wishing to use a foreign bank account had to provide their banking information to DLA on a separate form outside of the SAM database.

p. The Enterprise Business System ("EBS") was a suite of computer applications that DLA used to procure material, track inventory, and pay its vendors and contractors. The DoD relied on the accuracy of the information contained in EBS, including account information, when paying vendors and contractors. When vendors and contractors made changes to their SAM database profile, EBS was automatically updated to reflect the change. For example, when a vendor or contractor changed its bank account

and bank routing number in the SAM database, that banking information was automatically updated in the EBS database.

q. In order for any DLA vendor to change its banking information from a foreign bank account to a domestic bank account, the payment method in EBS had to be changed manually. The payment method listed in EBS dictates the type of account to be paid (*i.e.*, domestic or foreign) and the type of currency to be used for payment (*i.e.*, U.S. dollars or a foreign currency). If a vendor's payment and banking information in the SAM database did not match the payment and banking information in the EBS database, then the DoD could not make a payment to the vendor.

r. For a vendor to do business with the DoD electronically, it had to request and be assigned a Commercial and Government Entity (hereinafter referred to as "CAGE") code, which was a five-position unique identifier for entities doing business with the Federal Government. As part of a vendor's registration in the SAM database, the vendor could be assigned a CAGE code.

s. To access the SAM database, a vendor or contractor had to have a user account. To register or update a company's SAM entity account, a user had to have a "role" in the SAM entity. The SAM user that initially registered a SAM entity was automatically given a "role" in the entity. The users with roles in a particular entity's registration could assign other SAM users roles for that entity.

t. To log in to SAM, a user had to enter a password and a

second "authentication factor." The Personal Key, which was a set of 16 random characters, could be used as the second authentication factor. The other options for the second authentication factor included entering a code that was texted or called to the phone number on the SAM user's personal registration.

**The DoD Contract**

u. Between on or about October 18, 2012 and September 7, 2018, Corporation 1 received payments from the DoD relating to DoD contracts into foreign bank accounts held by Corporation 1.

v. On or about July 27, 2018, DoD awarded Corporation 1 a contract, which was valued at approximately $20,594,397 to provide approximately 10,080,000 gallons of Aviation JA1 Turbine fuel to troops in southeast Asia.

w. Pursuant to the contact, Corporation 1 provided the United States Military with approximately 10,498,141 gallons of Aviation JA1 Turbine fuel valued at $23,453,250 in and around southeast Asia.

**The Conspiracy**

2. From on or about June 15, 2018 through in or about October 11, 2018, in the District of New Jersey, and elsewhere, defendant

HURRIYET ARSLAN

did knowingly and intentionally conspire and agree with Co-Conspirators 1 through 4, and with others, known and unknown, to devise a scheme and artifice to (1) defraud the Department of Defense and to obtain money and

property from the Department of Defense by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice: (a) to cause to be transmitted by means of wire communications in interstate and foreign commerce, certain signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343 and (b) to cause to be placed or cause to be deposited in a post office and authorized depository for mail to be delivered by the United States Postal Service and any private or commercial carrier certain mail matters, contrary to Title 18, United States Code, Section 1341; and (2) to defraud a financial institution, namely TD Bank, and attempted to defraud a financial institution, namely, Bank of America, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of TD Bank and Bank of America, by means of materially false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

**The Object of the Conspiracy**

3. It was the object of the conspiracy to steal money from the DoD by using phishing attacks to obtain Log-in Credentials and Personal Key identifiers, and then to use those credentials and identifiers to make unauthorized changes to the victim's SAM account – thereby diverting DoD's payments to bank accounts controlled by members of the conspiracy and defrauding the financial institutions receiving the funds.

**Manner and Means of the Conspiracy**

4. It was part of the conspiracy that various conspirators designed and deployed on the Internet fraudulent web pages ("Phishing Pages") that resembled the public-facing GSA's SAM website.

5. It was further part of the conspiracy that the conspirators caused phishing e-mails to be sent to various DoD venders, including Victim 1, in an attempt to trick the vendors into visiting the Phishing Pages. These phishing e-mails appeared to be legitimate but were actually fraudulent e-mails that contained electronic links to the Phishing Pages. The customers who clicked on the electronic links were directed automatically to the Phishing Pages, where they saw what appeared to be the GSA's SAM website and were prompted for and entered their Log-In Credentials and Personal Key.

6. It was further part of the conspiracy that the conspirators caused Victim 1's Log-In Credentials and Personal Key, which Victim 1 had typed into Phishing Pages, to be intercepted and transmitted – not to the GSA, as Victim 1 intended – but to computers and e-mail accounts that the conspirators controlled.

7. It was further part of the conspiracy that the conspirators used Victim 1's Log-in Credentials and Personal Key to access Corporation 1's SAM entity account and then changed the bank account information to reflect bank accounts controlled by defendant HURRIYET ARSLAN and CC4.

8. It was further part of the conspiracy that CC4 contacted the DoD, identifying himself as Victim 1 and providing Corporation 1's CAGE Code, to

confirm that Corporation 1's payment method had been changed in the SAM database and cause the change to be made in EBS to reflect the Deal Automotive Sales TD Bank account.

**Furthering the Conspiracy**

In furtherance of the conspiracy and to effect its objects, defendant HURRIYET ARSLAN and his co-conspirators, both known and unknown, committed the following acts, among others, in the District of New Jersey and elsewhere:

9. Between on or about August 6 and 13, 2018, the conspirators caused Victim 1 to receive phishing emails seeking Victim 1's Log-In Credentials and Personal Key, as related to the SAM database.

10. On or about August 17, 2018, CC3 sent defendant HURRIYET ARSLAN several texts messages. CC3 instructed defendant ARSLAN to form a company, open two bank accounts for the company, and obtain a phone number for the company. CC3 also instructed defendant ARSLAN to ensure that one of the bank accounts was opened at Bank of America. For this service, CC3 was to pay defendant ARSLAN $20,000, of which a couple thousand dollars would be paid in advance and the rest would be paid at the end.

11. On or about August 18, 2018, defendant HURRIYET ARSLAN sent CC3 pictures which contained Deal Automotive Sales' TD Bank account and routing numbers.

12. In or about August 2018, defendant HURRIYET ARSLAN recruited

Witness 1 to create a business named Global Trac World LLC. ("Global Trac"), which was incorporated in New Jersey on August 29, 2018. The listed purpose of Global Trac was to import/export industrial parts.

13. On or about August 21 and 28, 2018, CC3, while located outside of the United States, sent text messages to defendant HURRIYET ARSLAN, in New Jersey, providing him with an address in North Hollywood, California associated with CC4.

14. On or about August 27, 2018, defendant HURRIYET ARSLAN received a text message from CC3 that contained a copy of a wire transfer receipt showing a transfer of $3,000 from CC1's Turkish bank account.

15. On or about August 28, 2018, defendant HURRIYET ARSLAN's Deal Automotive Sales account at TD Bank (hereinafter "Deal Account 1") received a $2,972 deposit originating from a bank account in Turkey.

16. On or about August 28, 2018, defendant HURRIYET ARSLAN sent a text message to CC3 of a T-Mobile receipt for cellular telephone number (609) 227-XXXX.

17. On or about August 29, 2018, at CC3's direction, defendant HURRIYET ARSLAN sent a SIM card for (609) 227-XXXX to CC4 at the North Hollywood, California address.

18. On or about August 30, 2018, defendant HURRIYET ARSLAN sent a text message to CC3 of a FedEx label addressed to an address in North Hollywood, California.

19. On or about August 30, 2018, CC2 contacted CC4 and told CC4

that the SIM card would be sent to CC4 from defendant HURRIYET ARSLAN.

20. On or about September 4, 2018, defendant HURRIYET ARSLAN received a text message from CC3 that contained a copy of a wire transfer receipt showing a transfer of $1,000 from CC1's Turkish bank account.

21. On or about September 5, 2018, defendant HURRIYET ARSLAN's Deal Account 1 account received a $955 deposit originating from a bank account in Turkey.

22. On or about September 7, 2018, defendant HURRIYET ARSLAN caused Witness 1 to open a nominee bank account in the name of Global Trac at Bank of America in New Jersey. Witness 1 falsely signed the Bank of America account opening documents as managing member.

23. On or about September 7, 2018, defendant HURRIYET ARSLAN sent text messages to CC3 images of the Global Trac bank account information, Global Trac formation documents and Witness 1's driver's license.

24. On or about September 7, 2018, Corporation 1's SAM account was changed from Corporation 1's foreign bank account to Global Trac's account at Bank of America.

25. On or about September 12, 2018, defendant HURRIYET ARSLAN sent text messages to CC4 screen shots of the Global Trac's Bank of America online page, account login information, and the identification of the individual who opened the account for defendant ARSLAN.

26. On or about September 12, 2018, CC4 logged into the Global Trac bank account at Bank of America.

27. On or about September 12, 2018, CC4 directed an individual to contact Bank of America using the 609-227-XXXX SIM card provided to him by defendant HURRIYET ARSLAN.

28. On or about September 17, 2018, Bank of America closed the Global Trac account.

29. On or about September 18, 2018, Corporation 1's SAM account was accessed by the co-conspirators using Victim 1's Log-In Credentials and Personal Key. During that session, Corporation 1's bank information was changed to the Deal Account 1.

30. On or about September 19, 2018, CC4 called DFAS, using cellular telephone number (609) 227-XXXX and identifying himself as Victim 1 from Corporation 1. CC4 provided Corporation 1's unique CAGE code to DFAS. During the call, CC4 advised DFAS that he had updated the bank information in the SAM account and wanted to make sure that the new information for TD Bank and not the Bank of America account was reflected within the DFAS database.

31. Based on CC4's information, on or about September 19 and 21, 2018, DoD employees accessed the EBS computer system, a non-public government computer used by DFAS to pay vendors, and changed the payment method from foreign bank account to a domestic bank account as reflected in the SAM database for Corporation 1.

32. On or about September 20, 2018, CC4 asked defendant HURRIYET ARSLAN to provide ARSLAN's company's email, telephone number and

address.

33. On or about September 22, 2018, a co-conspirator sent defendant HURRIYET ARSLAN an email attaching three altered Government contracts, which indicated that Deal Automotive Sales had been awarded DoD contracts valued at between $17 and $22 million dollars each.

34. On or about October 9, 2018, CC4 sent a text message to defendant HURRIYET ARSLAN advising that the payment would occur sometime between the "9th and the 13th." CC4 told defendant ARSLAN that documents would be sent to defendant ARSLAN and asked defendant ARSLAN to provide the documents with the exact amount deposited into the account so CC4 could prepare the documents according to the incoming figures.

35. On or about October 10, 2018, DoD transferred $23,453,350.90 into defendant HURRIYET ARSLAN's Deal Account 1.

36. On or about October 10, 2018, a coconspirator sent defendant HURRIYET ARSLAN an email with an altered government contract indicating that Deal Automotive Sales was awarded a DoD contract valued at approximately $23 million dollars.

37. On or about October 10, 2018, defendant HURRIYET ARSLAN accessed the Deal Account 1 at a TD Bank branch in Burlington County, New Jersey and transferred $459,350 to another bank account defendant ARSLAN controlled (hereinafter "Deal Account 2").

38. On or about October 10, 2018, in an attempt to have TD Bank release the remainder of the DoD funds, defendant HURRIYET ARSLAN told a

TD bank representative that people in Turkey had chosen him to purchase vehicles at an auction in Turkey. Defendant ARSLAN also provided the bank representative with a document entitled "Proforma Invoice from Aydos Boats," which purportedly had been issued to Deal Automotive Sales, LLC in the amount of $21,411,079 for the supply of "Fast Patrol Attack Crafts" to "U.S. Customs and Border Protection – New York/Newark Service Port."

39. On or about October 11, 2018, based on a telephone call that defendant HURRIYET ARSLAN placed to CC4 the day before, the TD Bank representative received an email from a co-conspirator, believed to be located outside of the United States, with a fraudulent DoD purchase order dated "August 17, 2018," indicating that DLA Energy/Bulk Petroleum Products had issued an award to "Deal Automotive Sales, LLC in the amount of $23,000,036.61." The delivery date was November 23, 2018. The contracting officer's name was printed on the form and dated August 17, 2018. The signature of the contracting officer was not provided on the form.

In violation of Title 18, United States Code, Section 1349.

**COUNT 2**
**[18 U.S.C. § 1344 – Bank Fraud]**

1. Paragraphs 1 and 3 through 39 of Count 1 of the Information are incorporated as if set forth in full herein.

2. On or about October 10 and 11, 2018, in the District of New Jersey, and elsewhere, defendant

HURRIYET ARSLAN

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud a financial institution, and aid and abet the scheme and artifice to defraud a financial institution, that was TD Bank, to obtain money, funds, credits, assets, securities, and other property owned by and under the custody and control thereof, by means of false and fraudulent pretenses, representations and promises, by submitting and causing to be submitted a false invoice from Aydos Boat dated August 10, 2018 indicating that Deal Automotive Sales LLC had purchased fast intervention craft and fast patrol craft on behalf of U.S. Customs and Border Protection, as well as a Department of Defense purchase order dated August 17, 2018 indicating that DLA Engery/Bulk Petroleum Products had issued an award to Deal Automotive Sales, LLC in the amount of $23,000,036.61.

In violation of Title 18, United States Code, Section 1344 and Title 18, United States Code, Section 2.

**COUNT 3**

**[18 U.S.C. § 1957 – Engaging in Monetary Transactions with Criminally Derived Funds]**

1. Paragraphs 1 and 3 through 39 of Count 1 of the Information are incorporated as if set forth in full herein.

2. On or about October 10, 2018, in the District of New Jersey, and elsewhere, defendant

HURRIYET ARSLAN

did knowingly engage and attempt to engage in the following monetary transactions, namely deposits, withdrawals, transfers, and exchanges of United States currency and monetary instruments through financial institutions affecting interstate commerce, in criminally derived property of a value greater than $10,000 which was derived from specified unlawful activity, namely, conspiracy to commit to wire, mail and bank fraud, contrary to Title 18, United States Code, Section 1349, as set forth in Count One, that was, following the transfer of $459,000 into a Deal Automotive Sales, LLC account controlled by defendant ARSLAN:(1) the purchase of two TD Bank Official Checks in the amount $50,000; (2) the purchase of a TD Bank Official Check in the amount $120,000 which was deposited into Deal Automotive Sales, LLC's account at Credit Union of New Jersey; and (3) the transfer of $93,900 to a TD Bank Mortgage account.

In violation of Title 18, United States Code, Section 1957(a), and Title 18, United States Code, Section 2.

**FORFEITURE ALLEGATION**

1. The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), upon conviction of the offense in violation of Title 18, United States Code, Section 1349 set forth in Count 1 of this Information, the defendant, HURRIYET ARSLAN, shall forfeit to the United States of America any and all property, real or personal, that constitutes or is derived from proceeds traceable the commission of such an offense. The property to be forfeited includes, but is not limited to, a sum of money equal to $23,453,350.90 in United States currency, representing the amount of proceeds obtained as a result of the offense. Defendant ARSLAN also agrees to forfeit the following specific property:

| In the name of | Institution | Account Number | Amount |
|---|---|---|---|
| Deal Automotive Sales, LLC | TD Bank | Ending in 8989 | $23,002,309.61 |
| Deal Automotive Sales, LLC | TD Bank | Ending in 7783 | $30,802.00 |
| Official Checks drawn on the account of: Deal Automotive Sales, LLC | TD Bank | 3 Cashiers' checks (Check #53686216-1) (Check #53686212-6) (Check #53686213-7) | $110,000.00 (aggregate amount) |
| Deal Automotive Sales, LLC | Credit Union of NJ | Ending in 3540 | $109,915.39 |

3. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

Craig Carpenito
CRAIG CARPENITO
United States Attorney

CASE NUMBER: 19-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

HURRIYET ARSLAN

INFORMATION FOR

18 U.S.C. § 1349
18 U.S.C. §1344
18 U.S.C. § 1957
18 U.S.C. § 2
18 U.S.C. § 981
28 U.S.C. § 2461

CRAIG CARPENITO
U.S. ATTORNEY, NEWARK, NEW JERSEY

JASON M. RICHARDSON
SARA A. ALIABADI
ASSISTANT U.S. ATTORNEY
CAMDEN, NEW JERSEY
(856) 757-5026

USA-48AD8
(Ed. 1/97)